Michelle L. WALKER, Appellant,

v.

Donna S. BLAIR, Appellee.

No. 2012–SC–000004–DGE.

Supreme Court of Kentucky.

Oct. 25, 2012.

Mitchell A. Charney, Allison Spencer Russell, Stephanie Lynn Morgan–White, Goldberg Simpson, LLC, Prospect, KY, Counsel for Appellant.

Denise Malone Helline, Celebrezze & Helline, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

The United States Supreme Court in *Troxel v. Granville* [1] addressed the federal constitutional implications of state statutes that allow courts to grant non-parent visitation with children over parental objections. A majority of that Court recognized that parents have a constitutionally protected liberty interest in rearing their children without government interference. To protect this liberty interest, courts must give appropriate weight in non-parent visitation proceedings to the parents' decision to deny visitation.

We accepted discretionary review of this case to consider how to interpret Kentucky's grandparent-visitation statute, Kentucky Revised Statutes (KRS) 405.021(1), consistently with the constitutional principles articulated in *Troxel* and whether the trial court in this case appropriately interceded to grant the grandmother visitation with the child despite the objection of the child's mother.

In accordance with *Troxel,* we hold that a fit parent is presumed to act in the best interest of the child. A grandparent petitioning for child visitation contrary to the wishes of the child's parent can overcome this presumption of validity only with clear and convincing evidence that granting visitation to the grandparent is in the child's best interest. In determining the child's best interest, the trial court can turn to the factors in the modified best interest analysis, which we outline in this opinion.

The trial court in the case before us appeared to acknowledge its obligation to afford the mother's decision some weight. But the trial court, in granting visitation to the grandmother, and the Court of Appeals in affirming the trial court's grant, relied on pre-*Troxel* case law that inappropriately placed grandparents on equal footing with parents when determining visitation. So we must reverse the decision of the Court of Appeals and remand the case to the trial court with directions to conduct a new evidentiary hearing and apply the legal standards consistent with this opinion.

## I. TRIAL COURT GRANTED GRANDMOTHER VISITATION OVER MOTHER'S OBJECTION, AND COURT OF APPEALS AFFIRMED.

Michelle Walker ("Walker") and Steve Blair ("Steve") had one child in common, B.B. Steve committed suicide. And a few months later, Steve's mother, Donna Blair ("Blair"), filed a petition under KRS 405.021(1) to establish grandparent visitation with five-year-old B.B. Walker opposed Blair's visitation petition and filed a motion to dismiss, which the trial court denied. The trial court held an evidentiary hearing in which Walker, Blair, and

1. 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

Martin Blair testified. Martin Blair is Blair's ex-husband and B.B.'s paternal grandfather.

Blair testified that she and B.B. had a close, loving relationship. And she exhibited pictures of B.B.'s baptism, birthdays, holidays, and other occasions. Blair claimed that she often babysat B.B. and took him swimming, to the movies, and on outings to Rough River. She and Walker got along well for most of B.B.'s life. But, after Steve's death, Blair called Walker and asked if Steve's suicide made her happy. She testified that she thinks Walker and her husband contributed to Steve's suicide but claimed that she no longer feels animosity toward them. At the time of the hearing, Blair was divorced from Martin Blair but still saw him once or twice weekly. Blair also had a history of depression. At the time of the hearing, she was taking three different antidepressant medications. She received counseling before and after Steve's death but had not seen her therapist for several months before the evidentiary hearing. She testified that her mental condition is stable.

Martin Blair also testified at the hearing. He acknowledged that an active domestic violence order (DVO) prohibited him from all contact with Walker. A court issued the DVO when, following Steve's suicide, Martin threatened to kill Walker and her husband. Martin, who is an alcoholic, was arrested for violating the DVO shortly after it was entered. He testified that he believes Walker contributed to Steve's suicide. And Martin acknowledged that he would not be allowed to see B.B. if Blair is granted visitation.

Walker testified that Blair had infrequent contact with B.B. According to Walker, Blair saw B.B. only when Steve exercised his right to see B.B. Walker placed B.B. in counseling after his father's suicide. Walker stated that B.B. has not asked to see or call his grandparents, and he does not recognize pictures of his grandparents. Although Walker opposed a court-ordered visitation schedule, she testified that she would follow the recommendation of B.B.'s therapist regarding his contact with Blair.

The trial court found that it was in B.B.'s best interest to grant visitation to Blair. The court ordered B.B.'s therapist to reinitiate contact between Blair and B.B. And the trial court indicated that the goal was for Blair eventually to have at least one biweekly, full-day visit or one overnight visit per month, along with reasonable visitation during holidays. Walker filed a motion to alter, amend, or vacate the trial court's order, which the trial court denied. On appeal by Walker, the Court of Appeals affirmed the trial court's order.

## II.  ANALYSIS.

■ We review the trial court's findings of fact applying the clearly erroneous standard,[2] under which we give due regard "to the opportunity of the trial court to judge the credibility of the witnesses."[3] But the interpretation of KRS 405.021(1) in accordance with federal constitutional law and the application of the appropriate standard to the facts are issues of law that we review de novo.[4]

### A.  KRS 405.021(1) and the Parents' Fundamental Liberty Interests.

KRS 405.021(1) provides, in pertinent part, that "[t]he Circuit Court may grant

**2.**  Kentucky Rules of Civil Procedure (CR) 52.01; *see also Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986) (applying CR 52.01 to review of child custody cases).

**3.**  CR 52.01.

**4.**  *Nash v. Campbell County Fiscal Court,* 345 S.W.3d 811, 816 (Ky.2011) (citation omitted).

reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so."

This Court last addressed Kentucky's grandparent visitation statute twenty years ago in *King v. King*.[5] In that case, the parents appealed the trial court's grant of grandparent visitation rights, arguing that the statute violated their liberty interests under the Fourteenth Amendment of the United States Constitution. In analyzing the statute's constitutionality, the Court extolled the "benefits to be derived from the establishment of a bond between grandparent and grandchild."[6] The Court opined that

> [i]f a grandparent is physically, mentally[,] and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent. That grandparents and grandchildren normally have a special bond cannot be denied. Each benefits from contact with the other. The child can learn respect, a sense of responsibility[,] and love. The grandparent can be invigorated by exposure to youth, can gain an insight into our changing society, and can avoid the loneliness which is so often a part of an aging parent's life.[7]

The Court found the statute constitutional because "[t]hese considerations by the state do not go too far in intruding into the fundamental rights of the parents."[8] The

Court neither gave presumptive weight to a fit parent's decision to deny visitation nor required grandparents to meet a heightened burden of proof of the child's best interest. The Court left the best interest analysis to the trial court's determination based on a preponderance of the evidence standard.

Eight years after *King*, the United States Supreme Court addressed third-party visitation in *Troxel v. Granville*.[9] Before the Court was a Washington statute that broadly permitted " '[a]ny person' to petition a superior court for visitation rights 'at any time[ ]' and authorize[d] that court to grant such visitation rights whenever 'visitation may serve the best interest of the child.' "[10] The trial court in *Troxel* granted visitation rights to a child's grandparents under this statute. On appeal, the Washington Supreme Court held that the statute unconstitutionally interfered with parents' fundamental right to raise their children. A plurality of the U.S. Supreme Court affirmed the state supreme court's decision.

A majority of the Court agreed that under the Due Process Clause of the Fourteenth Amendment, parents have a fundamental liberty interest in the care, custody, and control of their children.[11] And a majority concurred that "there is a presumption that fit parents act in the best interests of their children."[12] The plurality opinion did not define the precise scope of the parental due process right in the

---

5. 828 S.W.2d 630 (Ky.1992).

6. *Id.* at 631.

7. *Id.* at 632.

8. *Id.*

9. 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

10. *Id.* at 60, 120 S.Ct. 2054.

11. *Id.* at 65–66, 120 S.Ct. 2054; *see also id.* at 77, 120 S.Ct. 2054 (Souter, J., concurring); *id.* at 79, 120 S.Ct. 2054 (Thomas, J., concurring); *id.* at 87, 120 S.Ct. 2054 (Stevens, J., dissenting); and *id.* at 95, 120 S.Ct. 2054 (Kennedy, J., dissenting).

12. *Id.* at 68, 120 S.Ct. 2054; *see also id.* at 86, 120 S.Ct. 2054 (Stevens, J., dissenting).

grandparent visitation context. Rather, Justice O'Connor's lead opinion held the Washington statute unconstitutional as applied to the case (1) because it did not require a court to give the parent's decision a presumption of validity or any special weight and (2) because the mother did not cut off the grandparent visitation entirely.[13]

In *Scott v. Scott,*[14] a panel of the Kentucky Court of Appeals interpreted KRS 405.021(1) in light of the federal constitutional rights delineated in *Troxel.* To protect parents' liberty interests under the Fourteenth Amendment, the panel held that "grandparent visitation may only be granted over the objection of an otherwise fit custodial parent if it is shown by clear and convincing evidence that harm to the child will result from a deprivation of visitation with the grandparent." [15]

The Court of Appeals, sitting en banc, soon overturned *Scott* in *Vibbert v. Vibbert.*[16] The court acknowledged that the rule in *Scott* properly presumed that a fit parent's decision is in the child's best interest. But the court decided that the *Scott* panel misread *Troxel,* which did not consider "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." [17] The full Court of Appeals in *Vibbert* held that requiring grandparents to show harm to the child was an unnecessarily strict and unworkable standard because it allowed "only one avenue for grandparents to challenge" the parent's decision.[18]

So the *Vibbert* court established a modified best interest standard for analyzing the best interest of the child under KRS 405.021(1).[19] The court required grandparents to prove by clear and convincing evidence that the requested visitation is in the best interest of the child. In lieu of the harm standard established in *Scott,* the modified best interest standard requires trial courts to

consider a broad array of factors in determining whether the visitation is in the child's best interest, including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; [and] the wishes and preferences of the child.[20]

This Court has not addressed grandparent visitation rights under KRS 405.021(1)

13. *Id.* at 67–75, 120 S.Ct. 2054.

14. 80 S.W.3d 447 (Ky.App.2002), *overruled by Vibbert v. Vibbert,* 144 S.W.3d 292 (Ky.App. 2004).

15. *Scott,* 80 S.W.3d at 451.

16. 144 S.W.3d 292 (Ky.App.2004).

17. *Troxel,* 530 U.S. at 73, 120 S.Ct. 2054.

18. *Vibbert,* 144 S.W.3d at 294–95.

19. It appears that the *Vibbert* court referred to the analysis as a *modified* best interest standard because the court starts with the presumption that visitation is not in the child's best interest. The grandparent must rebut this presumption with clear and convincing evidence that visitation is in the child's best interest. We continue to refer to this as the modified best interest standard.

20. *Id.* at 295.

since *King v. King*.[21] So the *Vibbert* modified best interest analysis established by the Court of Appeals has remained the standard for determining grandparent visitation petitions under KRS 405.021(1). But some confusion lingers in the lower courts as to whether *King* remains good law in light of *Troxel.* In the case at hand, Walker complains that the trial court supported its decision to grant visitation to Blair with *Dotson v. Rowe*,[22] which quoted *King* approvingly. The Court of Appeals rejected Walker's argument, holding that later cases further developed *Dotson* (and, thus, *King* ) but did not overturn the case. We disagree with the Court of Appeals on this issue.

▮▮ The *King* decision effectively placed grandparents and parents on equal footing in determining grandparent visitation rights. It did not recognize a presumption in favor of a fit parent's decision to deny visitation to the grandparent. But, as the majority of the Supreme Court agreed in *Troxel,* the Due Process Clause requires that a fit parent's decision be given special weight because there is a presumption that a fit parent acts in the child's best interest. "[W]hen this Court analyzes state legislation under the federal Due Process ... Clause[ ], it is bound by the decisions of the United States Supreme Court."[23] So *Troxel* overturned *King.* And *King's* ruminations on the generalized benefits that arise from a relationship between a grandparent and grandchild no longer have any role in determining grandparent visitation rights.

*King* and its progeny are no longer good law, but that is not to say that KRS 405.020(1) is unconstitutional. Rather, as the Court of Appeals did in *Scott* and *Vibbert,* we must interpret the statute to comply with the federal constitutional standards set forth in *Troxel.* We approve of the modified best interest standard established in *Vibbert.* And we take this opportunity to clarify the proper analysis for the benefit of the bench and bar.

**B. Applying KRS 405.021(1) and the Modified Best Interest Standard.**

▮▮ When considering a petition for grandparent visitation, the court must presume that a fit parent is making decisions that are in the child's best interest. "[T]he Due Process Clause does not permit a [s]tate to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."[24] So long as a parent is fit, "there will normally be no reason for the [s]tate to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."[25] So a fit parent's wishes are not just a factor to consider in determining what is in the child's best interest.[26] The constitutional presumption that a fit parent acts in the child's best interest is the start-

---

21. 828 S.W.2d 630 (Ky.1992).

22. 957 S.W.2d 269, 270–71 (Ky.App.1997).

23. *Commonwealth of Ky., Natural Res. and Envtl. Prot. Cabinet v. Kentec Coal Co., Inc.,* 177 S.W.3d 718, 734 (Ky.2005) (citations omitted).

24. *Troxel,* 530 U.S. at 72–73, 120 S.Ct. 2054.

25. *Id.* at 68–69, 120 S.Ct. 2054.

26. In *Grant v. Lynn,* 268 S.W.3d 382 (Ky.App. 2008), the Court of Appeals erroneously upheld the trial court's analysis under *Vibbert* in which the trial court stated that "the parent's wishes are only one factor that the [c]ourt must consider in determining what is in the child's best interest." *Id.* at 384.

ing point for a trial court's analysis under KRS 405.021(1).

■■ The grandparent petitioning for visitation must rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. In other words, the grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation.

■ A trial court can look at several factors to determine whether visitation is clearly in the child's best interest. The *Vibbert* court laid out many of these factors, including:

1) the nature and stability of the relationship between the child and the grandparent seeking visitation;

2) the amount of time the grandparent and child spent together;

3) the potential detriments and benefits to the child from granting visitation;

4) the effect granting visitation would have on the child's relationship with the parents;

5) the physical and emotional health of all the adults involved, parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; and

7) the wishes and preferences of the child.

To this list, we add:

8) the motivation of the adults participating in the grandparent visitation proceedings.

The motivation of the parent in prohibiting visitation and the motivation of the grandparent in pursuing visitation are factors that can be used to determine the child's best interest.

■ Contrary to Blair's contention, the trial court should not attempt to determine whether the parent is actually fit before presuming that the parent is acting in the child's best interest. The trial court must presume that a parent adequately cares for his or her child (*i.e.*, is fit) and acts in the child's best interest. The trial court should then turn to the *Vibbert* factors to decide whether the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest.

■ Rather than a threshold determination that governs application of the parental presumption, parental fitness is inherently addressed in the *Vibbert* factors, including the mental and emotional health of the parents and, to some extent, the stability of the child's living and schooling arrangements. The presumption is that a fit parent acts in the child's best interest. To the extent that there is an element lacking in the parent-child relationship, it is possible that the grandparent can fill that child's need. This is a fact-intensive inquiry, not a general assumption of all grandparent-grandchild relationships, which also depends on the grandparent's mental and emotional health and overall stability.

■ But the inquiry is not whether the parent is actually unfit and, therefore, no longer receives the benefit of the parental presumption. Nor is a grandparent required to show that a parent is unfit in order to overcome the parental presumption.[27] Rather, through the *Vibbert* fac-

---

27. Grandparent visitation hearings should not turn into parental fitness determinations. The point is not to put the parent on trial. And trial courts are best situated to prevent this from happening.

tors, which inherently address parental fitness, a grandparent can show that the parent is mistaken in the belief that visitation is not in the child's best interest.

■ Also implicit in the factors is the prior *Scott* harm standard. If the grandparent demonstrates that harm to the child will result from a deprivation of visitation with the grandparent, this is very strong evidence that visitation is in the child's best interest. But showing harm to the child is not the only way that a grandparent can rebut the presumption in favor of the child's parents. And we turn now to some of the factors in the modified best interest analysis.

■ The effect that granting visitation would have on the child's relationship with the parents is an important factor of the best interest analysis. The plurality opinion in *Troxel* recognized that "[t]he extension of statutory rights in this area to persons other than a child's parents ... comes with an obvious cost. For example, the [s]tate's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship." [28] This is especially true if animosity exists between the parent and grandparent. Grandparent visitation should not be granted if it is clearly detrimental to the parent-child relationship.

■ It is typical in grandparent visitation determinations for grandparents to present proof of the nature of the relationship between the grandparent and child. The question arises whether clear and convincing proof of a loving relationship alone is enough to overcome the parental presumption. Except in special circumstances, it is not enough. Kentucky courts cannot presume that grandparents and grandchildren will always benefit from contact with each other. If the only proof that a grandparent can present is that they spent time with the child and attended holidays and special occasions, this alone cannot overcome the presumption that the parent is acting in the child's best interest. The grandparent must show something more—that the grandparent and child shared such a close bond that to sever contact would cause distress to the child. Again, these determinations are fact-intensive. But we can imagine such a close bond, for example, in situations where the child and grandparent lived in the same household for a period of time, or where the grandparent regularly babysat the child.[29] To allow visitation on a lesser showing would put fit grandparents on equal footing as fit parents, which violates the Due Process Clause.

■ Finally, we address the motivations of the adults participating in the grandparent visitation proceedings. A grandparent can rebut the presumption that a fit parent acts in the child's best interest by presenting proof that the parent is not actually acting in the child's best interest. If the parent is motivated purely by spite or vindictiveness, this can be proof that the parent is acting out of self-interest rather than a concern for the child's best interest. It may also be the case that a parent is acting out of spite, but the best interest of the child truly is not served by granting grandparent visitation. So proof of vindictiveness on the parent's part does not automatically rebut the parental presumption. It is likewise true that grandparents may also act out of spite or vindic-

**28.** *Troxel*, 530 U.S. at 64, 120 S.Ct. 2054.

**29.** These examples are merely illustrative and are not intended to foreclose other scenarios in which a close bond could develop between a grandparent and grandchild.

tiveness in seeking visitation. The trial court should also consider the grandparent's motivation when determining whether grandparent visitation is in the child's best interest.

To summarize, the trial court must presume that a parent is acting in the child's best interest. The grandparent petitioning for visitation may rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. And the trial court may consider several factors to determine whether visitation is clearly in the child's best interest. Grandparent visitation cases are fact-intensive inquiries for trial courts. But a trial court may not override parents' constitutional liberty interest in rearing their child simply because the judge believes that a better decision could be made.

## C. The Trial Court Did Not Correctly Apply the Standard for Determining Grandparent Visitation.

■ Walker contends that in granting Blair visitation under KRS 405.021(1), the trial court failed to give her decision to deny visitation the special weight that is due a fit parent. She also argues that Blair failed to rebut by clear and convincing evidence the presumption that Walker is acting in B.B.'s best interest. We agree.

■ The trial court articulated the standard required by *Troxel* and *Vibbert* but also relied on overruled case law. In its order, the trial court cited *Baker v. Perkins* [30] for the proposition that "parental opposition is not sufficient alone to

deny the grandparent visitation. . . ." This statement does not afford a fit parent's decision the presumption required by *Troxel.* The burden is not on the parent to show why grandparent visitation should be denied. Rather, the grandparent must show by clear and convincing evidence that visitation is in the child's best interest. To the extent that *Baker v. Perkins* conflicts with this standard, it is overruled.

■ The trial court also quoted the *King* decision's pronouncement of the benefits of allowing visitation between a grandparent and grandchild. And the trial court found that Blair's contact with B.B. would benefit Blair. The trial court's reliance on *King* is also erroneous. As stated above, *King* is no longer good law after *Troxel* because it assumed that grandparent visitation is always beneficial to a child and placed grandparents on the same footing as parents. And the potential benefit of visitation for the grandparent has no place in a trial court's determination of the child's best interest.

■ The trial court stated in its order that Blair overcame the parental presumption by clear and convincing evidence. After reviewing the record, it appears the trial court actually applied the lesser preponderance of the evidence standard. From our review of the evidence in the record, we have concerns about the evidence supporting the trial court's fact finding.[31] But we recognize that the trial court is better situated to judge the evidence and the credibility of witnesses. And two years have passed since the original hearing took place. So the evidence

**30.** 774 S.W.2d 129 (Ky.App.1989).

**31.** For instance, the trial court stated that it had "no concerns about the mental or physical health of any of the parties." But the record reveals that Blair experienced mental distress before and after her son's suicide. At

the time of the evidentiary hearing, Blair was taking three prescribed antidepressants. But she had not been in therapy for several months leading up to the hearing. And there was no proof, other than her own testimony, that Blair's mental health had stabilized.

regarding B.B.'s best interest has likely changed. We conclude that the better course is to remand the case to the trial court for a new evidentiary hearing applying the modified best interest standard consistent with this opinion.[32]

### D. The Trial Court Properly Denied Walker's Motion to Dismiss.

Walker contends that the trial court erroneously denied her motion to dismiss Blair's visitation petition. In her motion to dismiss, Walker claimed that Blair could only seek visitation under KRS 405.021(3) because B.B.'s father was deceased. KRS 405.021(3) provides,

> The Circuit Court may grant noncustodial parental visitation rights to the grandparent of a child if the parent of the child who is the son or daughter of the grandparent is deceased and the grandparent has assumed the financial obligation of child support owed by the deceased parent, unless the court determines that the visitation is not in the best interest of the child. If visitation is not granted, the grandparent shall not be responsible for child support.

Walker alleged that visitation was inappropriate because Blair did not assume Steve's financial obligation of child support. Alternatively, Walker claimed that Blair must proceed under subsection (3) of the grandparent/visitation statute because Blair was requesting visitation equal to that of a noncustodial parent.[33] We disagree. The trial court properly denied Walker's motion to dismiss.

A grandparent whose child is deceased may seek visitation under subsection (3) of the grandparent visitation statute if the grandparent has assumed the financial obligation of child support owed by the deceased parent if it is in the child's best interest. But a grandparent whose child is deceased is not required to seek noncustodial visitation under this subsection. Correspondingly, visitation under KRS 405.021(1) is not limited to situations in which the grandparent's child is still alive. The legislature did not intend to force a grandparent whose child is deceased to choose between seeking noncustodial visitation and pay child support or forfeiting visitation altogether.

Blair was entitled to seek visitation under subsection (1) of the grandparent visitation statute. She petitioned the trial court for grandparent visitation with B.B., not noncustodial parental visitation. Blair did not assume the financial obligation of child support owed by her deceased son. Nor did she offer to pay child support in her petition for visitation. And the amount of time that Blair indicated in her deposition that she would like to spend with B.B. is not controlling.[34] So the trial court properly denied Walker's motion to dismiss Blair's petition.

## III. CONCLUSION.

When ruling on a grandparent visitation petition under KRS 405.021(1), the trial court must presume that the parent is acting in the child's best interest. The

---

**32.** Because the case is remanded for a new evidentiary hearing, we will not address Walker's contention that the trial court erroneously granted substantial, unsupervised visitation.

**33.** On appeal, Walker's argument shifted. She now claims that the trial court granted visitation equal to the amount that a noncustodial parent would receive, so the trial court

should have also required Blair to pay child support. Because we are remanding for a new evidentiary hearing, this issue is moot.

**34.** In her deposition, Blair stated that she would like to see B.B. four to five hours every other week, on his birthday, and on holidays, and would enjoy overnight visits.

grandparent petitioning for visitation may rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. And the trial court may consider several factors, which we have denominated the modified best interest standard, to determine whether visitation is clearly in the child's best interest.

A new evidentiary hearing is appropriate in this case because the trial court did not apply the appropriate standard in determining whether visitation with Blair was in B.B.'s best interest, the trial court's findings of fact are troubling, and two years have passed since the original hearing. So we reverse the decision of the Court of Appeals, vacate the trial court's visitation order, and remand this case to the trial court with directions to conduct a new evidentiary hearing on Blair's petition applying legal standards consistent with this opinion.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion.

SCOTT, J, Dissenting:

Although I agree with most of the majority's well-crafted opinion, I must respectfully dissent. The majority adopts a rule requiring a grandparent to rebut the parental presumption (i.e., that a fit parent acts in the best interests of his or her child) by clear and convincing evidence. Instead, I would hold that a grandparent can rebut the presumption by a preponderance of the evidence.

It is beyond dispute that there is a *societal* presumption that it is usually healthier when a child has a loving relationship with a loving grandparent. It exists because familial history has proved it to be true in most cases. This opinion, then, is to give guidance where there is a disagreement between a parent and a grandparent. But where the parental denial is based purely upon spite, we should not create an almost insurmountable hurdle for the loving grandparent. Indeed, not even *Troxel* commands the clear and convincing standard.

Accordingly, it makes no sense to me why we should require a grandparent to overcome the extra hurdle of rebutting the presumption by clear and convincing evidence when a preponderance of the evidence would be sufficient. Because I believe that Blair overcame the presumption by a preponderance of the evidence, I would affirm.