**Matthew Lee DOANE, Appellant**

v.

**Betty Jo GORDON; Deborah Bolin; Fred Paul; and M.D., a minor child, Appellees**

and

**M.D., a minor child, Appellant.**

v.

**Betty Jo Gordon; Deborah Bolin, and Fred Paul, Appellees.**

**Nos. 2013–CA–000659–ME, 2013–CA–000677–ME.**

Court of Appeals of Kentucky.

Jan. 31, 2014.

John H. Helmers, Jr., Allison S. Russell, Louisville, KY, for Appellant Matthew Lee Doane.

Chanda H. Gault, Louisville, KY, for Appellant, M.D., a Minor Child.

Jean Kelley Cunningham, Shelbyville, KY, for Appellee Betty Gordon.

Before COMBS, DIXON, and VANMETER, Judges.

### OPINION

COMBS, Judge:

Matthew Lee Doane was granted custody of M.D.D., a minor child, following a

proceeding for dependency, neglect, and abuse. Doane and M.D.D. appeal an order of the Spencer Family Court holding that the natural mother of M.D.D. remained entitled to decide whether the child's natural grandmother could exercise visitation with him. After our review, we reverse and remand.

M.D.D. was born to Deborah Bolin on March 17, 2008.[1] However, the child was removed from her care when the Cabinet for Health and Family Services initiated dependency, neglect, and abuse proceedings. As part of the proceedings, Matthew Doane was granted temporary custody of the child by the Henry Family Court. Bolin was initially permitted supervised, "sight and sound" visitation with the child, but her visitation was suspended after it was determined that the visits were harmful to M.D.D.

In January 2011, after an adjudication hearing in the dependency, neglect, and abuse action, the Henry Family Court awarded permanent custody of the child to Doane. The child has remained in Doane's care since May 2010.

On June 5, 2012, Betty Jo Gordon, Bolin's mother and an Indiana resident, filed an action in Spencer Family Court pursuant to Kentucky Revised Statute[s] (KRS) 405.021, which provides for court-ordered grandparent visitation. Gordon directed her summons to Bolin at the address that she shares with her mother. Bolin filed a responsive pleading in which she consented to visits between the child and his grandmother. Doane vigorously opposed the proposed visitation.

The family court appointed a guardian *ad litem* (GAL) to represent the child's interests. After her investigation, the GAL concluded that neither of the child's natural parents had maintained a relationship with him; that neither was a fit parent; and that neither was in a position to make any decisions with respect to whether it was in the child's best interest to have a relationship with Gordon. The GAL also concluded from her investigation that Gordon had manifested a complete lack of judgment concerning the protection of children in her care; that she had maintained absolutely no relationship with the child; and that any visits with the child under the circumstances would likely be detrimental to his well-being. The GAL recommended that Gordon's action be dismissed.

The family court conducted an evidentiary hearing on November 19, 2012. Following the hearing, the court found as follows:

Ms. Gordon has had very little relationship with [M.D.D.] and spent very little time with him. Given that [M.D.D.] is now in a stable home away from what appears to have been a considerably unstable one, reintroducing him to that situation over the objections of Mr. Doane would likely be detrimental to him.

Applying the analysis prescribed by the Kentucky Supreme Court in *Walker v. Blair*, 382 S.W.3d 862 (Ky.2012), the family court initially concluded that Gordon's petition for grandparent visitation would ordinarily fail since she had not shown that it was in the child's best interest that visitation be awarded. However, since Bolin's parental rights had not been terminated, the family court held that Bolin retained the paramount right to determine whether Gordon could interact with M.D.D. Because Bolin had expressed her preference in favor of the visitation, the family court granted the petition. Howev-

---

1. Eventually, a court-ordered DNA test indicated that Fred Paul, a stranger to these proceedings, was the baby's biological father.

er, the court provided that its order would take effect only "upon expiration of the time for any party to appeal if no appeal is filed or upon further order of the appellate courts." These timely appeals, heard together, followed.

On appeal, Doane and M.D.D. contend that the family court erred by concluding that Bolin's decision to grant grandparent visitation should prevail over Doane's objections. We agree.

■ A right to grandparent visitation does not exist at common law. Instead, grandparents' rights to visitation derive from statutory authority. KRS 405.021(1) permits a family court to grant visitation to the maternal or paternal grandparents of a child if it determines that it is in the "best interest" of the child to do so.

In *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court addressed the constitutionally protected liberty interest that parents have in rearing their children without government interference. The Court held that states may not interfere with the fundamental right of parents to make decisions concerning the care, custody, and control of their children and that they must afford due deference to the wishes of the parents. The Court noted the traditional presumption that fit parents act in the best interests of their children and that parents' decisions must ordinarily be honored.

In *Walker v. Blair*, 382 S.W.3d 862 (Ky. 2012), the Supreme Court of Kentucky echoed the principles articulated in *Troxel*. The court re-emphasized the presumption that a fit parent makes decisions that are in her child's best interests as a component of the fundamental rights of parents to raise their children. *Walker* went a step beyond *Troxel* and created a heightened evidentiary standard: that a grandparent must establish by clear and convincing proof that visitation is in the best interest of the child.

■ The state has not attempted to interfere with the fundamental right of Bolin to make decisions concerning the care, custody, and control of her child through this proceeding. In fact, the family court's decision not to grant Gordon visitation rights (on the basis that it was not in the child's best interest) had no bearing whatsoever on Bolin's rights; she had already lost legal and physical custody of M.D.D. through the dependency, neglect, and abuse proceedings in Henry Family Court. Gordon's rights under Kentucky's grandparent visitation statute are governed solely by the "best interest" standard articulated in the provision, and her rights are legally separate and apart from any fundamental liberty interest of Bolin's, an interest that Bolin had lost standing to assert. Under the circumstances of this case, the family court was under no obligation to accord special weight to Bolin's wishes with respect to her son's best interests. The court was correct in the first instance after it examined the evidence and concluded that the child's best interests would not be served by awarding the requested visitation. Those initial findings were supported by substantial evidence, and the facts support its original inclination that Gordon's petition for grandparent visitation should fail.

We reverse the order of the court and remand for entry of an order consistent with this opinion.

ALL CONCUR.