RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1362-MR

TREVOR GAMBLE                                              APPELLANT


v.
APPEAL FROM MCCRACKEN CIRCUIT COURT
HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 22-CI-00362


RODNEY GAMBLE AND DANETTE                       APPELLEES
GAMBLE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

THOMPSON, CHIEF JUDGE: Trevor Gamble appeals from an order of the McCracken Family Court which awarded Rodney and Danette Gamble grandparent visitation with Appellant's minor son, H.G. (hereinafter referred to as Child). Appellant argues that the facts of the case do not support the conclusion that grandparent visitation is in Child's best interests. We believe that the trial court did not err; therefore, we affirm the court's judgment.

## FACTS AND PROCEDURAL HISTORY

Appellees are the parents of Appellant and the paternal grandparents of Child. In July of 2020, Child's mother was diagnosed with cancer. In September of 2021, Child's mother died. During the period where Child's mother was fighting cancer, Appellees would help take care of Child and his older sister.[1] Appellees would babysit the children while Appellant and his wife would go to doctor and treatment appointments. Sometimes this would only be for a few hours, but could also last a few days. For the last eight weeks of the mother's life, Danette moved into Appellant's home to help care for the children and their mother.

According to Appellant, around the time of his wife's death, Child's sister began having mental problems. He testified that she began cutting and burning herself, and was threatening to kill herself, Appellant, and Child. Appellant took Child's sister to multiple mental health treatment facilities and she received some treatment.[2] According to Appellant, his daughter's mental health became so bad that he had to remove her from the house in order to protect Child. Around February of 2022 he left his daughter with a maternal grandparent and she

---

[1] Child's sister is not part of the underlying case.

[2] There is no information in the record regarding the daughter's mental health diagnosis or the extent of her treatment, and no medical records were entered into the record.

has remained in the care of other family members ever since. At about the same time, Appellant also cut off all contact with Appellees and other family members. This included not allowing Appellees any further contact with Child. Appellant did so because Appellees believed Appellant was exaggerating his daughter's mental health issues and that Appellant wanted to "get rid of" his daughter.

In May of 2022, Appellees filed a petition seeking grandparent visitation rights, and a hearing was held in October of 2022. Appellant and Appellees testified at the hearing. Appellant requested the court interview Child, who was twelve years old at the time, but the court declined to do so. At the conclusion of the hearing, the trial court awarded Appellees visitation rights. An order reflecting the award of grandparent visitation was entered shortly thereafter, and this appeal followed.

## ANALYSIS

Appellant's argument on appeal is that the trial court erred in awarding Appellees grandparent visitation rights. Kentucky Revised Statutes (KRS) 405.021(1)(a) states that "[t]he Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so." There are many issues a court must consider when making a determination of grandparent visitation rights. "[T]he Due Process

-3-

Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000). A parent's fundamental right to make decisions regarding his or her children includes a "presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69 (citation omitted).

> When considering a petition for grandparent visitation, the court must presume that a fit parent is making decisions that are in the child's best interest. "[T]he Due Process Clause does not permit a [s]tate to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." So long as a parent is fit, "there will normally be no reason for the [s]tate to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." So a fit parent's wishes are not just a factor to consider in determining what is in the child's best interest. The constitutional presumption that a fit parent acts in the child's best interest is the starting point for a trial court's analysis under KRS 405.021(1).

> The grandparent petitioning for visitation must rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. In other words, the grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation.

*Walker v. Blair*, 382 S.W.3d 862, 870-71 (Ky. 2012) (footnotes and citations omitted).

The trial court should consider the following factors when determining if grandparent visitation is in the child's best interests:

1) the nature and stability of the relationship between the child and the grandparent seeking visitation;

2) the amount of time the grandparent and child spent together;

3) the potential detriments and benefits to the child from granting visitation;

4) the effect granting visitation would have on the child's relationship with the parents;

5) the physical and emotional health of all the adults involved, parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; []

7) the wishes and preferences of the child[; and] . . .

8) the motivation of the adults participating in the grandparent visitation proceeding.

*Id.* at 871.

But the inquiry is not whether the parent is actually unfit and, therefore, no longer receives the benefit of the parental presumption. Nor is a grandparent required to show that a parent is unfit in order to overcome the parental presumption. Rather, . . . a grandparent can show that the parent is mistaken in the belief that visitation is not in the child's best interest.

*Id.* at 871-72 (footnote omitted).

It is typical in grandparent visitation determinations for grandparents to present proof of the nature of the relationship between the grandparent and child.  The question arises whether clear and convincing proof of a loving relationship alone is enough to overcome the parental presumption.  Except in special circumstances, it is not enough.  Kentucky courts cannot presume that grandparents and grandchildren will always benefit from contact with each other.  If the only proof that a grandparent can present is that they spent time with the child and attended holidays and special occasions, this alone cannot overcome the presumption that the parent is acting in the child's best interest.  The grandparent must show something more – that the grandparent and child shared such a close bond that to sever contact would cause distress to the child.  Again, these determinations are fact-intensive.  But we can imagine such a close bond, for example, in situations where the child and grandparent lived in the same household for a period of time, or where the grandparent regularly babysat the child.  To allow visitation on a lesser showing would put fit grandparents on equal footing as fit parents, which violates the Due Process Clause.

*Id.* at 872 (footnote omitted).

To summarize, the trial court must presume that a parent is acting in the child's best interest.  The grandparent petitioning for visitation may rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest.  And the trial court may consider several factors to determine whether visitation is clearly in the child's best interest.  Grandparent visitation cases are fact-intensive inquiries for trial courts.  But a trial court may not override parents' constitutional liberty interest in

rearing their child simply because the judge believes that a better decision could be made.

*Id.* at 873.

> We review the trial court's findings of fact applying the clearly erroneous standard, under which we give due regard "to the opportunity of the trial court to judge the credibility of the witnesses." But the interpretation of KRS 405.021(1) in accordance with federal constitutional law and the application of the appropriate standard to the facts are issues of law that we review de novo.

*Id.* at 867 (footnotes and citations omitted).

With all of the above in mind, we now turn to the evidence submitted to the trial court during the hearing held in this case. Appellees testified that they saw Child around once a week and Child spent the night with them around once a month. Their testimony also set forth the help Danette was to the family during the time Appellant's wife was fighting cancer. Testimony from Appellees indicated they were babysitting Child frequently, sometimes for days at a time, and that Danette moved into Child's home during the last eight weeks of the life of Appellant's wife. Appellees also testified that they attended almost all of Child's basketball games and cross-country meets.

On the other hand, Appellant's testimony was drastically different. He acknowledged that Danette moved into the home for the last eight weeks of his wife's life, but that is the only similarity between the testimonies of the parties.

-7-

Appellant testified that Appellees would see Child about once a month and usually only at family functions. Appellant also testified that Appellees would not babysit Child for long periods of time, just brief periods. Appellant also testified that Appellees only attended one of Child's basketball games during the five years he participated and attended zero cross-country meets during the three years he participated. Finally, Appellant testified that he would allow Child to resume a relationship with Appellees if Appellees would admit that his daughter had serious mental health issues.

As to the order being appealed, the trial court held that Appellees' testimony was more credible than that of Appellant. In addition, the court discussed the *Troxel* and *Walker* factors and held that they weighed in favor of granting Appellees visitation. The court also specifically mentioned that it believed Appellant was acting out of anger toward Appellees because Appellees continued to have a relationship with his daughter. The trial court ultimately granted Appellees visitation.

We conclude that the trial court did not err in this case. The trial court acknowledged the presumption that Appellant was acting in Child's best interests; however, the court went on to find that Appellees rebutted this presumption. The evidence indicated that Appellees spent significant time with Child, that Child had a good relationship with Appellees, that Appellees would not interfere with Child's

relationship with Appellant, and that Appellees would not interfere with Child's education should they have visitation with him during school time.

In addition, the trial court believed that Appellant was withholding access to Child out of anger toward his parents and not to protect Child's best interests.

> A grandparent can rebut the presumption that a fit parent acts in the child's best interest by presenting proof that the parent is not actually acting in the child's best interest. If the parent is motivated purely by spite or vindictiveness, this can be proof that the parent is acting out of self-interest rather than a concern for the child's best interest. It may also be the case that a parent is acting out of spite, but the best interest of the child truly is not served by granting grandparent visitation. So proof of vindictiveness on the parent's part does not automatically rebut the parental presumption. It is likewise true that grandparents may also act out of spite or vindictiveness in seeking visitation. The trial court should also consider the grandparent's motivation when determining whether grandparent visitation is in the child's best interest.

*Id.* at 872-73.

## CONCLUSION

While Appellant may have presented evidence contrary to that of Appellees, the trial court is in the best position to judge the credibility of the witnesses. Based on the testimony of the parties, the trial court's findings of fact were not clearly erroneous. The court concluded that Appellant was not acting in

the best interests of Child by withholding visitation with his grandparents.  Based on the foregoing, we find no error and affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEES.

Heather L. Jones
Paducah, Kentucky