RENDERED:  DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0262-MR

CHERYL SWANSON                                                          APPELLANT

v.

APPEAL FROM GREENUP FAMILY COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 22-CI-00380

BRITTANY TACKETT AND
RAYMOND CHARLES
SWANSON                                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

KAREM, JUDGE:  Cheryl Swanson ("Cheryl") appeals from a Greenup Family

Court order denying her petition for visitation with her granddaughter.  She

contends the family court failed to consider that the child's father was motivated

by vindictiveness in stopping her visitation.  Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cheryl is the paternal grandmother of L.T. ("Child"), who was born in 2018. Cheryl's son, Raymond, is Child's father. Brittany Tackett is Child's mother. Raymond and Brittany are divorced.

Cheryl filed a petition for grandparent visitation on October 6, 2022, alleging that Brittany and Raymond had denied her communication and contact with Child for no legitimate reason. Brittany filed a response to the petition in which she stated that she was not required to give visitation to any person and that she was acting in the rational best interest of her child in denying visitation. Raymond filed a response *pro se* in which he stated that he did not believe his mother was an appropriate individual to be around his daughter. He alleged that Cheryl is incapable of maintaining healthy boundaries with him and Child, that she becomes aggressive and irate when challenged, that she lives in terrible conditions and may be a compulsive hoarder, that she is rude and inappropriate, that she feeds Child expired or insect-infested foods or foods to which Child is allergic, and allows Child to engage in play which he deems inappropriate.

The family court conducted a hearing at which Cheryl was the only witness. She testified that she used to see Child when Raymond brought her over on Sunday afternoons, from approximately 2:00 p.m. until dark. When Raymond moved to Ashland, Child stayed with him on weekends so Cheryl would see her

for longer periods, from Friday night until Sunday. She testified that she had not spoken to Brittany for several years. She alleged that Raymond ceased allowing visitation when she stopped giving him money.

On cross-examination by Brittany's counsel, Cheryl testified that she had not seen Child for one year and three months. She also testified that she was not alleging Brittany was an unfit parent or that she was not capable of making good decisions for Child. She testified that the same was true for Raymond.

Brittany's attorney made a motion for a directed verdict which the family court granted. The family court explained that fit parents have the right to make decisions about who can be around their children, except if the parents have allowed the child to be around a grandparent to such an extent that taking away visitation would be detrimental to the child. The family court concluded that Brittany and Raymond had not allowed Cheryl's relationship with Child to get to the point that withholding it would be to the detriment of Child.

The family court entered a written order denying the petition, finding that Cheryl's testimony proved that Brittany and Raymond are fit and proper parents who can make rational decisions in regard to their child. The court further found, based on Cheryl's testimony, that she had not seen Child in over fifteen months and before that would see her occasionally on Sunday afternoons. The

family court concluded that there was not sufficient proof of a relationship between Cheryl and Child to order visitation.

This appeal by Cheryl followed.

**THE STATUTORY FRAMEWORK AND STANDARD OF REVIEW**

Kentucky Revised Statute 405.021(1)(a) provides that the "Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child . . . if it determines that it is in the best interest of the child to do so." In *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the United States Supreme Court recognized that parents' fundamental right to raise their children means "there is a presumption that fit parents act in the best interests of their children[,]" and that "if a fit parent's decision . . . becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* at 68, 70, 120 S. Ct. at 2061, 2062.

Because of this constitutional presumption, the Kentucky Supreme Court has held that a grandparent must show that visitation is in the child's best interest by the heightened clear and convincing standard. "In other words, the grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to

-4-

deny the grandparent visitation." *Walker v. Blair*, 382 S.W.3d 862, 871 (Ky. 2012).

> It is typical in grandparent visitation determinations for grandparents to present proof of the nature of the relationship between the grandparent and child. The question arises whether clear and convincing proof of a loving relationship alone is enough to overcome the parental presumption. Except in special circumstances, it is not enough. . . . The grandparent must show something more – that the grandparent and child shared such a close bond that to sever contact would cause distress to the child. Again, these determinations are fact-intensive. But we can imagine such a close bond, for example, in situations where the child and grandparent lived in the same household for a period of time, or where the grandparent regularly babysat the child. To allow visitation on a lesser showing would put fit grandparents on equal footing as fit parents, which violates the Due Process Clause.

*Id*. at 872 (footnote omitted).

In determining whether visitation is in the child's best interest, the trial court is provided with several factors to consider:

> 1) the nature and stability of the relationship between the child and the grandparent seeking visitation;
>
> 2) the amount of time the grandparent and child spent together;
>
> 3) the potential detriments and benefits to the child from granting visitation;
>
> 4) the effect granting visitation would have on the child's relationship with the parents;

5) the physical and emotional health of all the adults involved, parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; . . .

7) the wishes and preferences of the child[;] . . . [and]

8) the motivation of the adults participating in the grandparent visitation proceedings.

*Id.* at 871 (citing *Vibbert v. Vibbert*, 144 S.W.3d 292, 295 (Ky. 2004)).

"[W]e will review the family court's findings of fact under a clearly erroneous standard of review, giving due regard to the opportunity of the family court to judge the credibility of the witnesses." *Blackaby v. Barnes*, 614 S.W.3d 897, 900 (Ky. 2021) (citations omitted).

## **ANALYSIS**

Cheryl argues that the family court failed to consider and give adequate weight to the eighth factor listed above, the motivation of the adults participating in the grandparent visitation proceedings. In the seminal case of *Walker v. Blair*, the Kentucky Supreme Court expounded on this factor:

> A grandparent can rebut the presumption that a fit parent acts in the child's best interest by presenting proof that the parent is not actually acting in the child's best interest. If the parent is motivated purely by spite or vindictiveness, this can be proof that the parent is acting out of self-interest rather than a concern for the child's best interest. It may also be the case that a parent is acting out of spite, but the best interest of the child truly is not served by granting grandparent visitation. So proof

-6-

of vindictiveness on the parent's part does not automatically rebut the parental presumption. It is likewise true that grandparents may also act out of spite or vindictiveness in seeking visitation. The trial court should also consider the grandparent's motivation when determining whether grandparent visitation is in the child's best interest.

382 S.W.3d at 872-73.

The only evidence presented that Raymond was acting vindictively in ending Cheryl's visitation with Child was Cheryl's own testimony. Raymond's response to her petition for visitation listed several reasons for ending visitation, and at the hearing he questioned Cheryl specifically about giving his daughter food to which she is allergic. The family court did not find evidence that Raymond and Brittany were motivated by vindictiveness to the point that overriding their wishes regarding visitation would be in Child's best interest. The family court did give considerable weight to the fact that Cheryl's visits with Child were of relatively short duration and that Cheryl had not seen Child for well over a year. "Kentucky courts cannot presume that grandparents and grandchildren will always benefit from contact with each other. If the only proof that a grandparent can present is that they spent time with the child and attended holidays and special occasions, this alone cannot overcome the presumption that the parent is acting in the child's best interest." *Id*. at 872.

Cheryl herself testified that Raymond and Brittany are fit parents. She simply did not provide clear and convincing evidence to override the constitutionally mandated presumption that their wishes regarding visitation with Child are paramount.

## **CONCLUSION**

For the foregoing reasons, the Greenup Family Court's order denying the petition for visitation is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:

James W. Lyon, Jr.
Greenup, Kentucky

BRIEF FOR APPELLEE BRITTANY TACKETT:

Erin N. Hall
R. Stephen McGinnis
Greenup, Kentucky