RENDERED: SEPTEMBER 6, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1472-MR

ANGELA J. WATKINS
APPELLANT


v.
APPEAL FROM FAYETTE CIRCUIT COURT
FAMILY DIVISION
HONORABLE CARL D. DEVINE, JUDGE
ACTION NO. 17-CI-01521


JESSICA L. WATKINS; ALEXUS T.
WALKER; AND DEMONTREY A.
NEAL
APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE: Angela Watkins, proceeding *pro se*, appeals the Fayette Family

Court's November 22, 2022, Order denying her motion for grandparent visitation.

We affirm.

# BACKGROUND

Alexus Walker (Mother) is the biological mother of M.K.N. (Child), and Angela Watkins (Grandmother) is Child's maternal biological grandmother. In December 2015, at four months old, Child presented to University of Kentucky Pediatric Emergency Center with a large burn blister on her left foot and several broken ribs in various stages of repair. Neither Mother, nor the biological father could explain these injuries. Both parents lost custody and Child was then placed with her maternal great aunt, Jessica Watkins (Great Aunt), Grandmother's sister. The placement proceeding ended with sole custody awarded to Great Aunt.

The instant action began in May of 2017 when Grandmother petitioned the Fayette Circuit Court, Family (6th) Division, for sole custody of Child. (Record (R.) at 3.) She amended her petition to seek only grandparent visitation pursuant to KRS[1] 405.021(1)(a). (R. at 58.) The family court conducted a hearing to allow Grandmother an opportunity to present evidence that would support a finding that grandparent visitation was in Child's best interest.

Grandmother testified that she saw Child occasionally in the earliest part of her life but had not seen her in four years. The court found it necessary "to keep her testimony on topic" by asking why she thought Child's best interest would be served by granting the petition. Grandmother responded, "Well, outside

---

[1] Kentucky Revised Statutes.

of it being my granddaughter, [there] was never a reason, or any type of substantiated anything, where the visitation should have stopped." (R. 99.)

Grandmother's only other witness was Mother, who spent her time testifying about the circumstances leading to Child's being taken from her custody. The court took judicial notice of the separate action that led to Great Aunt's custody and, "[c]redibility issues aside," found Mother's testimony irrelevant "with respect to determining [Grandmother's] visitation, because . . . none of [Mother's] testimony related to how [Child] would benefit from [Grandmother's] having visitation . . . ." (R. 101.)

Great Aunt presented countervailing evidence. Child's younger sibling, J.N., also was removed from Mother's custody and was awarded to the children's paternal great grandmother, Vanna Brittain. Ms. Brittain testified that when she allowed Grandmother visitation with J.N., it resulted in visitation with Mother, who spoke to the younger sibling "about inappropriate subjects" and led to "an increase in behavioral issues at daycare. Ms. Brittain enrolled [Child's younger sibling] in therapy and eventually hired an attorney to [put a] halt to [Grandmother's] visitation with J.N." (R. 102.) She further testified to her concern about "psychological damage that could occur" to Child if Grandmother were awarded visitation, claiming Grandmother and Mother "are responsible for

creating needless turmoil by often making accusations against" Brittain and Great Aunt. (R. 102-03.)

Another witness, Great Aunt's boyfriend, testified that Grandmother would show up, unannounced, after Child was asleep and then become upset when she was not allowed to visit. He also testified that Grandmother made derogatory comments about Great Aunt on social media. (R. 103.)

Grandmother's own mother traveled from Michigan to testify. She expressed her concern that Child's visitation with Grandmother would be detrimental. (R. 103-04.) She said Child, her great grandchild, was "a happy and beautiful child and it would not be in her [best] interest for her to have contact with [her daughter, Grandmother] and [her granddaughter, Mother]" because they "will be a source of conflict and drama with respect to [Child]." (R. 104.)

Grandmother's and Great Aunt's sister, Teresa Stokes, traveled from Michigan with her mother to testify. Ms. Stokes was herself a foster parent and said Grandmother "was unwilling to follow protocols regarding visitation" and made "false allegations" about Great Aunt. (R. 104-05.) She also testified that granting Grandmother visitation would destabilize Child's relationships with family members and that Grandmother is "angry" and "condones and encourages the [family's] dysfunction." (R. 105.)

The family court denied Grandmother's petition. This appeal follows.

## STANDARD OF REVIEW

A circuit or family court has the authority to "grant grandparent visitation so long as [it] complies with *Walker* [*v. Blair*, 382 S.W.3d 862 (Ky. 2012)] in applying" KRS 405.021(1)(a). *Pinto v. Robison*, 607 S.W.3d 669, 677 (Ky. 2020). Circuit and family "courts must use the preponderance of the evidence standard when considering grandparent visitation if someone other than a parent, including another grandparent, is the grandchild's custodian." *Morton v. Tipton*, 569 S.W.3d 388, 399 (Ky. 2019). We review findings of fact under the clearly erroneous standard and those findings must be supported by substantial evidence. CR[2] 52.01. We review legal conclusions *de novo*. *Id.*

## ANALYSIS

Appellees failed to file a brief. Pursuant to our current rules of appellate procedure, "If the appellee's brief has not been filed within the time allowed, the court may" undertake a more cursory review of the appeal. RAP[3] 31(H)(3)(a), (b), (c). Alternatively, a reviewing court may always review a circuit court's judgment measured against an appellant's argument on its merits. We choose to do so in this case because exercising any of RAP 31(H)(3)'s options would not serve justice. We turn to the merits.

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Rules of Appellate Procedure.

-5-

"The Circuit Court may grant reasonable visitation rights to . . . grandparents of a child . . . if it determines that it is in the best interest of the child to do so." KRS 405.021(1)(a). We conclude that, as required by *Pinto v. Robison*, *supra*, the Fayette Circuit Court complied with *Walker v. Blair*, *supra*, in applying KRS 405.021(1)(a).

Both *Pinto* and *Walker* apply a clear-and-convincing burden of proof because the grandparent in each of those cases sought to compel visitation from a biological parent custodian. When the custodian is a biological (or adoptive) parent, "the grandparent must show by clear and convincing evidence that visitation is in the child's best interest." *Walker*, 382 S.W.3d at 873. However, circuit and family "courts must use the preponderance of the evidence standard when considering grandparent visitation if someone other than a parent . . . is the grandchild's custodian." *Morton*, 569 S.W.3d at 399.

Making no distinction between nonparent and parent custodians, *Pinto* says the same modified analysis of *Walker v. Blair* still applies. However, when the custodian is not a biological or adoptive parent, the several factors themselves in that modified analysis require modification, substituting the word "custodian" for "parent" or adding the word "custodian" where necessary and applicable. Consequently, the *Walker v. Blair* factors comprising the modified best interest analysis when applied to a nonparent custodian are necessarily as follows:

1) the nature and stability of the relationship between the child and the grandparent seeking visitation;

2) the amount of time the grandparent and child spent together;

3) the potential detriments and benefits to the child from granting visitation;

4) the effect granting visitation would have on the child's relationship with the [custodian];

5) the physical and emotional health of all the adults involved, [custodian,] parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; . . .

7) the wishes and preferences of the child[; and]

8) the motivation of the adults participating in the grandparent visitation proceedings.

*Walker*, 382 S.W.3d at 871.

We have considered the record and juxtaposed the evidence with each of the factors of "the modified best interest analysis" applicable to grandparent visitation petitions established in *Walker v. Blair*. The paucity of specific evidence regarding Child's "schooling arrangements" and "the wishes and preferences of the child" prevents a consideration of factors 6 and 7, and they must be deemed neither to favor nor disfavor Grandmother's petition. However, the preponderance of the evidence as to each of the other six factors weighs against a finding that visitation is in Child's best interest. Not only did the circuit court find the witnesses who

testified against the petition more credible, a determination this Court is bound to accept, it also found such testimony corroborated by other evidence.

## **CONCLUSION**

This Court concludes the Fayette Circuit Court committed no error in finding Grandmother failed to satisfy her burden of proof by a preponderance of the evidence that her visitation with Child would be in Child's best interest. Therefore, we affirm.


ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Angela J. Watkins, *pro se*
Nicholasville, Kentucky