RENDERED: SEPTEMBER 24, 2020
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2019-SC-0615-DE

FINAL
DATE 10-15.20

JUSTIN PINTO

APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2019-CA-0435
PULASKI CIRCUIT COURT NO. 07-CI-00501

VAN ROBISON AND VERIA ROBISON;                    APPELLEES
WILLIAM BROWN; AND DANIEL CAMERON,
ATTORNEY GENERAL

**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING**

Justin Pinto appeals the Court of Appeals' reversal of the Pulaski Circuit

Court's ruling that Kentucky Revised Statute ("KRS") 405.021(1)(b) and (c),

which governs grandparent visitation, is unconstitutional. This Court granted

Pinto's motion for discretionary review. Having reviewed the record and

considered the arguments of the parties, we hereby reverse the Court of

Appeals.

**I. BACKGROUND[1]**

Lisa and Justin Pinto are the parents of two children, I.P. and R.P.[2] Lisa

and Justin were divorced in 2006, and as part of that divorce, Lisa was granted

---

[1] This case has a long and tortuous history. Because the facts of the underlying
case are not particularly relevant to our legal analysis, we only discuss them briefly.

[2] Consistent with the lower courts and to help protect their privacy, we will refer
to the minor children by their initials.

sole custody of the two children while Justin was granted visitation. In 2007, Lisa married William Brown, and the couple, along with the two children, moved to North Carolina in 2014. In May 2016, Justin filed a motion to modify custody, seeking to be awarded sole custody of the children due to Lisa's declining health. In June 2016, Lisa's parents, the Robisons, along with Brown, filed a motion to intervene in the custody action. In July 2016, Lisa lost her battle with cancer and passed away. The Pulaski Circuit Court granted Brown temporary custody of the children and ordered that the parties participate in mediation and reconciliation therapy to help the children reestablish their relationship with their father. The case remained in this status for nearly two years.

In May 2018, Brown filed a motion for sole custody of the children. After conducting a full trial on the matter, the Pulaski Circuit Court entered a final judgment granting Justin's 2016 motion to modify custody and denying Brown's motion for sole custody. As a result of that judgment, Justin was granted full and sole custody of the children. Thereafter, the Robisons filed a motion to amend the final judgment to include grandparent visitation pursuant to KRS 405.021(1). Notably, the Robisons' motion did not specify under which paragraph of KRS 405.021(1) they were making their request.

Justin argued the Robisons' motion should be dismissed on procedural grounds, but also argued that KRS 405.021(1)(b) and (c) is unconstitutional under *Troxel v. Granville*, 530 U.S. 57 (2000), and *Walker v. Blair*, 382 S.W.3d 862 (Ky. 2012). Justin argued to the circuit court and again argues to this

2

Court that KRS 405.021(1)(b) and (c) does not adequately account for the presumption that a fit parent acts in a child's best interest and impermissibly lowers the burden by which grandparents must overcome that presumption. The circuit court entered extensive factual findings concluding unequivocally that the children would benefit from continuing their frequent and meaningful contact with their grandparents. However, it ultimately agreed with Justin's constitutional argument. It found KRS 405.021(1)(b) and (c) to be unconstitutional as it failed to comply with *Troxel* and dismissed the Robisons' motion for grandparent visitation.

The Robisons appealed to the Court of Appeals. The Court of Appeals first noted that although the circuit court found KRS 405.021(1)(b) and (c) to be unconstitutional, the circuit court did not analyze the Robisons' motion under KRS 405.021(1)(a), a subsection of the statute that was held to be constitutional by this Court in *Walker* provided a certain evidentiary process was followed. The Court of Appeals further noted, however, that the Robisons did not argue the circuit court erred by failing to analyze their claims under *Walker*'s interpretation of KRS 405.021(1)(a) and therefore the court did not address that issue. The Court of Appeals then addressed the constitutionality of KRS 405.021(1)(b) and (c). The court distinguished the statute at issue from the statutes at issue in both *Troxel* and *Walker*. The Court of Appeals concluded that KRS 405.021(1)(b) and (c) was narrowly tailored to a very specific set of circumstances and served to protect the relationships a child had with his or her grandparents before the death of the child's parent. Therefore,

3

the Court of Appeals held the statute was constitutional, and reversed and remanded the case to the circuit court. We then granted discretionary review.

## II. ANALYSIS

Justin argues the Court of Appeals erred in reversing the Pulaski Circuit Court's ruling that KRS 405.021(1)(b) and (c) is unconstitutional. Because this case concerns a matter of constitutional construction or interpretation, we review it de novo. *Greene v. Commonwealth*, 349 S.W.3d 892, 898 (Ky. 2011).

KRS 405.021(1) states as follows:

(a) The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by the termination of parental rights belonging to the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.

(b) If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.

(c) In order to prove a significant and viable relationship under paragraph (b) of this subsection, the grandparent shall prove by a preponderance of the evidence that:

1. The child resided with the grandparent for at least six (6) consecutive months with or without the current custodian present;

2. The grandparent was the caregiver of the child on a regular basis for at least six (6) consecutive months;

4

3. The grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months; or

4. There exist any other facts that establish that the loss of the relationship between the grandparent and the child is likely to harm the child.

Only the constitutionality of subsections (b) and (c) are at issue in this case.

In reviewing a claim that a state statute is unconstitutional, we must be mindful that "a statute is presumed to be constitutional unless it clearly offends the limitations and prohibitions of the Constitution. The one who questions the validity of an act bears the burden to sustain such a contention.'" *Commonwealth v. Harrelson*, 14 S.W.3d 541, 547 (Ky. 2000) (quoting *Stephens v. State Farm Mutual Auto Ins. Co.*, Ky., 894 S.W.2d 624 (1995)). Justin relies on *Troxel v. Granville*, 530 U.S. 57, and *Walker v. Blair*, 382 S.W.3d 862, to support his argument that KRS 405.021(1)(b) and (c) is unconstitutional. Thus, a thorough review of those cases is necessary to determine this issue.

In *Troxel v. Granville*, Brad Troxel and Tommie Granville had two children together. 530 U.S. at 60. Jenifer and Gary Troxel were Brad's parents, and thus the paternal grandparents of the two children. *Id.* The children regularly visited with the Troxels, even after their father passed away. *Id.* Eventually, however, Tommie informed the Troxels that she wanted to limit the time her children spent with them. *Id.* at 61. The Troxels then filed a petition in the Washington Superior Court to obtain visitation rights with the girls. *Id.* At issue in the case was Washington Revised Code § 26.10.160(3) which stated,

5

"Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." *Id.* The Washington Superior Court entered a visitation decree ordering certain visitation, and Granville appealed from that decree. *Id.* The case eventually made its way to the United States Supreme Court at which time that Court was called upon to determine the constitutionality of the Washington statute at issue. *Id.* at 63.

In *Troxel,* the United States Supreme Court recognized that the interest of parents in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court" and protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 65. Further, the Court "recognized the fundamental right of parents to make decisions concerning their care, custody, and control of their children." *Id.* at 66.

The Court then reviewed the statute at issue and noted the language of the statute

> effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference.

*Id.* at 67. The Court then held that the statute, as applied, "exceeded the bounds of the Due Process Clause. *Id.* at 68. The Supreme Court next made

clear that "there is a presumption that fit parents act in the best interests of their children." *Id.* It went on to explain

> so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Id.* at 68-69. It then took issue with the Washington Superior Court's failure to give any special weight to Granville's determination of her children's best interests and its effective requirement that Granville *disprove* that visitation would be in the children's best interests. *Id.* at 69. This, the Court held, "failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 70. Accordingly,

> the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Id.* A state cannot infringe on a parent's fundamental right to make decisions regarding his or her children merely because the judge "believes a 'better' decision could be made." *Id.* at 73.

Although the United States Supreme Court struck down the Washington statute as it was applied in the case before it, the Court chose not to further define "the precise scope of the parental due process right in the visitation context." *Id.* The Court expressed hesitation with holding any particular state statute regarding nonparental visitation was unconstitutional as a per se

7

matter, as "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best 'elaborated with care.'" *Id.* (quoting J. Kennedy's dissenting opinion, *id.* at 2079).

Twelve years after *Troxel*, this Court was called upon to apply the United States Supreme Court's holdings to the Kentucky grandparent visitation statute in *Walker v. Blair*, 382 S.W.3d 862. Michelle Walker and Steve Blair had one child in common. *Id.* at 866. After Blair's death, his parents filed a petition under KRS 405.021(1) to establish grandparent visitation with the child. *Id.* The version of KRS 405.021(1) in effect at the time was verbatim the current KRS 405.021(1)(a), quoted above. Walker opposed a court-ordered visitation schedule. *Id.* The trial court found that visitation with his grandparents was in the child's best interest and ordered visitation, over Walker's objection. *Id.*

This Court reviewed Kentucky prior jurisprudence on the issue of grandparent visitation and determined much of it was no longer good law after *Troxel. Id.* at 870. We then reiterated the Supreme Court's holdings in *Troxel* and sought to further clarify them. Based on *Troxel*, we stated, "The constitutional presumption that a fit parent acts in the child's best interest is the starting point for a trial court's analysis under KRS 405.021(1)." *Id.* at 870-71. We then clarified the burden of proof that a grandparent must meet to overcome that presumption. We stated,

8

> The grandparent petitioning for visitation must rebut this
> presumption with clear and convincing evidence that visitation
> with the grandparent is in the child's best interest. In other words,
> the grandparent must show that the fit parent is clearly mistaken
> in the belief that grandparent visitation is not in the child's best
> interest. If the grandparent fails to present such evidence to the
> court, then parental opposition alone is sufficient to deny the
> grandparent visitation.

*Id.* at 871.

Next, we delineated eight factors a trial court can look at in deciding whether a parent is clearly mistaken in his or her belief that grandparent visitation is not in the child's best interest. Those factors are: 1) the nature and stability of the relationship between the child and the grandparent seeking visitation; 2) the amount of time the grandparent and child spent together; 3) the potential detriments and benefits to the child from granting visitation; 4) the effect granting visitation would have on the child's relationship with the parents; 5) the physical and emotional health of all the adults involved, parents and grandparents alike; 6) the stability of the child's living and schooling arrangements; 7) the wishes and preferences of the child; and 8) the motivation of the adults participating in the grandparent visitation proceedings. *Id.* Finally, we made clear that determining whether grandparent visitation is in a child's best interest is a very fact-specific inquiry. *Id.* We ultimately held that if KRS 405.021(1) was applied following these principles, it did not run afoul of a parent's fundamental liberty interest in raising his or her child. *Id.* at 870.

Having reviewed the relevant caselaw, we now turn to the statute at issue in this case. KRS 405.021(1)(b) and (c) state as follows:

9

(b) If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.

(c) In order to prove a significant and viable relationship under paragraph (b) of this subsection, the grandparent shall prove by a preponderance of the evidence that:

> 1. The child resided with the grandparent for at least six (6) consecutive months with or without the current custodian present;
>
> 2. The grandparent was the caregiver of the child on a regular basis for at least six (6) consecutive months;
>
> 3. The grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months; or
>
> 4. There exist any other facts that establish that the loss of the relationship between the grandparent and the child is likely to harm the child.

The statute, on its face, runs afoul of a parent's fundamental constitutional right to the care and custody of his or her child.

First, the statute allows a grandparent to prove a "significant and viable relationship" with the child in one of four ways. The proof, however, need only be by a preponderance of the evidence. The preponderance of the evidence standard is lower than the clear and convincing evidence standard that we require under *Walker* for a grandparent to rebut the presumption that a parent is acting in the child's best interest by limiting or denying visitation. Because proving such a relationship by a mere preponderance standard is the only element required by the statute to give the grandparents a rebuttable presumption in their favor, which in turn effectively rebuts the presumption in

10

favor of the parent, the statute fails to accord the parent's determination regarding his or her child the "special weight" required by *Troxel.*

The Robisons argue that the factual scenarios required to be present under KRS 405.021(1)(c) "point to the issue of whether a parent, 'adequately cares for his or her children,' as Justice O'Connor defined 'fitness.'" They further argue that paragraph (c) requires that the grandparent had been "in an *in loco parentis* role for an extended period of time." Those contentions simply are not true. For example, KRS 405.021(1)(c)(4) allows a trial court to find a significant and viable relationship between the child and the grandparent as long as the trial court finds that there exists "any other facts that establish that the loss of the relationship between the grandparent and the child is likely to harm the child." By its very terms, that paragraph of the statute requires no specific time period or strength of relationship between the child and the grandparent. Further, paragraph (b) allows a trial court to find a significant and viable relationship between the child and the grandparent if "[t]he grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months." This paragraph could be met if the grandparent merely babysat the children on a regular basis or hosted a family dinner that the child attended once each week. While we agree that such regular contact would likely show a relationship exists, it does not necessarily show the strength of that relationship and certainly does not show that the parents are not fit or that the grandparent acted *in loco parentis.*

11

We recognize that the conditions listed in KRS 405.021(1)(c) reflect some of the factors delineated in *Walker* that a trial court can look at to determine whether visitation is clearly in the child's best interest. *See Walker*, 382 S.W.3d at 871. However, not all of the *Walker* factors are included in KRS 405.021(1)(c), but even if they were, we made clear it is still a fact-intensive determination. *See id.* at 872. Further, even if the *Walker* factors are sufficient to overcome the presumption that a parent is acting in the child's best interest, they are not sufficient to *flip* that presumption such that visitation with the grandparent would be *presumed* to be in the best interest of the child, a presumption which the parent would then be required to rebut.

Turning now to KRS 405.021(1)(b), we see where the flipping of the presumption occurs. Paragraph (b) states as follows:

> If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.

Under this, if a grandparent can prove the existence of a significant and viable relationship with the child merely by a preponderance of the evidence as previously discussed, the grandparent is then entitled to a presumption in his or her favor. This portion of the statutory scheme again fails to accord the requisite "special weight" required by *Troxel* to the parent's determination regarding his or her child. It does not comply with the presumption in favor of the parent that this Court requires under *Walker*. Accordingly, it is violative of the United States Constitution's Due Process Clause on its face.

12

All 50 states have enacted some version of a grandparent visitation statute; however, the variations on these statutes are too numerous to discuss in this opinion. In our review, it appears that only a few states have enacted legislation similar enough to ours to merit direct comparison, and our holding today is consistent with the treatment of those similar statutes by the high courts of those states.

The statute we found to be most similar to KRS 405.021(1)(b) and (c) is from Washington and was held to be unconstitutional by the Supreme Court of Washington in *In re Parentage of C.A.M.A.*, 109 P.3d 405 (Wash. 2005). In that case, the Supreme Court of Washington looked at Revised Code of Washington ("RCW") 26.09.240, the state's third-party visitation statute. In full, the statute provided:

> (1) A person other than a parent may petition the court for visitation with a child at any time or may intervene in a pending dissolution, legal separation, or modification of parenting plan proceeding. A person other than a parent may not petition for visitation under this section unless the child's parent or parents have commenced an action under this chapter.
>
> (2) A petition for visitation with a child by a person other than a parent must be filed in the county in which the child resides.
>
> (3) A petition for visitation or a motion to intervene pursuant to this section shall be dismissed unless the petitioner or intervenor can demonstrate by clear and convincing evidence that a significant relationship exists with the child with whom visitation is sought. If the petition or motion is dismissed for failure to establish the existence of a significant relationship, the petitioner or intervenor shall be ordered to pay reasonable attorney's fees and costs to the parent, parents, other custodian, or representative of the child who responds to this petition or motion.
>
> (4) The court may order visitation between the petitioner or intervenor and the child between whom a significant relationship

13

exists upon a finding supported by the evidence that the visitation is in the child's best interests.

(5)(a) *Visitation with a grandparent shall be presumed to be in the child's best interests when a significant relationship has been shown to exist.* This presumption may be rebutted by a preponderance of evidence showing that visitation would endanger the child's physical, mental, or emotional health.

(b) If the court finds that reasonable visitation by a grandparent would be in the child's best interest except for hostilities that exist between the grandparent and one or both of the parents or person with whom the child lives, the court may set the matter for mediation under RCW 26.09.015.

(6) The court may consider the following factors when making a determination of the child's best interests:

(a) The strength of the relationship between the child and the petitioner;

(b) The relationship between each of the child's parents or the person with whom the child is residing and the petitioner;

(c) The nature and reason for either parent's objection to granting the petitioner visitation;

(d) The effect that granting visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(e) The residential time sharing arrangements between the parents;

(f) The good faith of the petitioner;

(g) Any criminal history or history of physical, emotional, or sexual abuse or neglect by the petitioner; and

(h) Any other factor relevant to the child's best interest.

(7) The restrictions of RCW 26.09.191 that apply to parents shall be applied to a petitioner or intervenor who is not a parent. The nature and extent of visitation, subject to these restrictions, is in the discretion of the court.

(8) The court may order an investigation and report concerning the proposed visitation or may appoint a guardian ad litem as provided in RCW 26.09.220.

(9) Visitation granted pursuant to this section shall be incorporated into the parenting plan for the child.

(10) The court may modify or terminate visitation rights granted pursuant to this section in any subsequent modification action upon a showing that the visitation is no longer in the best interest of the child.

*C.A.M.A.*, 109 P.3d 405, 409–10 (quoting WASH. REV. CODE § 26.09.240) (emphasis added). Subsection (5)(a) of that statute deals specifically with grandparent visitation and is the parallel of our KRS 405.021(1)(b), as it creates a presumption that grandparent visitation is in the best interest of the child "when a significant relationship" is shown. The Supreme Court of Washington, after discussing *Troxel*, held simply and concisely,

[I]t is clear that subsection (5)(a) directly contravenes the constitutionally required presumption that the fit parent acts in the child's best interests.... The United States Supreme Court held that a court must accord "special weight" to the parents' own determination, and because subsection (5)(a) establishes a presumption antonymous to that constitutionally required "special weight," the subsection must fail.

*Id.* at 411. KRS 405.021(1)(b) suffers from the same fatal flaw.

This opinion should not be read to hold that *all* grandparent visitation statutes are unconstitutional. In fact, we are leaving intact KRS 405.021(1)(a) and KRS 405.021(3) as potential avenues for a trial court to grant grandparent visitation so long as the trial court complies with *Walker* in applying those subsections of the statute. We recognize the changing dynamics of families in today's society and the important and influential role that extended family members, especially grandparents, play in raising today's children. With this in mind, we leave open the possibility that the legislature may enact further grandparent visitation statutes that *do* comport with the Due Process Clause

15

and accord the requisite "special weight" to a parent's determination of the best interests of their child.[3]

Finally, as the Court of Appeals noted, the trial court did not analyze the Robisons' motion for grandparent visitation under KRS 405.021(1)(a) and this Court's interpretation of that statutory section in *Walker*. After the trial court's order was entered, the Robisons did not request the trial court make any additional factual findings or apply paragraph (a) to their motion. Further, the Robisons did not argue to the Court of Appeals or to this Court that the trial court erred in failing to analyze their motion under paragraph (a). Therefore, with an eye towards finality and stability for the children and rest of the family, we will not address whether the trial court should have done so or remand for it to do so.

## III. CONCLUSION

For the foregoing reasons, we reverse the opinion of the Court of Appeals and reinstate the trial court's order.

Minton, C.J.; Hughes, Keller, Nickell, VanMeter and Wright, JJ., sitting. All concur. Lambert, J., not sitting.

---

[3] An example of a statute that includes many of the factors found in KRS 405.021(1)(c) but still gives a parent's decision presumptive weight in accordance with *Troxel* can be found in *In re Adoption of J.P.*, 385 S.W.3d 266 (Ark. 2011).

COUNSEL FOR APPELLANT:

Ralph D. Gibson

COUNSEL FOR APPELLEES, VAN ROBISON AND VERIA ROBISON:

Bruce W. Singleton