RENDERED: OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0684-MR

BRANDY KEELING                                                    APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 24-CI-00038


JOHN MCCUTCHEN                                                     APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Brandy Keeling appeals the McCracken Family Court's

April 19, 2024, Order denying her motion for grandparent visitation. We affirm.

**BACKGROUND**

Appellant, Brandy Keeling ("Grandmother"), is the maternal

grandmother of eight-year-old P.M. (hereinafter, "Child"). Appellee, John Caleb

McCutchen ("Father"), is the biological father of Child. Grandmother's daughter

and Child's biological mother, Ashley Stephens ("Mother"), died tragically by suicide.

Child was born in February of 2016. Father and Mother had shared joint custody of Child from October 2016 until March 2019. At that time, Father was awarded primary custody and Child resided primarily with him at the time of Mother's suicide in December of 2019. Father has since had sole custody of Child.

In the initial period following Mother's death, Father allowed Grandmother to visit with Child. This included Grandmother seeing Child at Father's home on a few occasions and attending Child's ballgames. The last of these visits occurred at a birthday party for Child that Grandmother attended. At some point, Grandmother learned that the birthday party was only one of two separate birthday parties Father had arranged for Child. The other was attended by Father's family as well as Mother's father; Grandmother had not been invited to this other party. Grandmother confronted Father about being upset by the arrangements. Following this, Father ceased any visits between Grandmother and Child. Grandmother periodically requested to Father that she be given an opportunity to visit with Child during the next few years. Father either declined or ignored each of the requests.

On January 15, 2024, Grandmother filed a Petition for Grandparent Visitation in McCracken Family Court. An Answer later filed by Father alleged

that he believed that visitations with Grandmother were not in the child's best interest and would be detrimental to Child's physical and/or emotional well-being. A hearing on Grandmother's petition occurred in McCracken Family Court on April 17, 2024, where the court heard testimony from the parties as well as witnesses.

At the hearing on her petition, Grandmother testified. Early in her testimony, she spent considerable time recounting the time she had spent with Child during the first years of his life. She admitted to having a history of drug addiction and incarceration that she said had resulted from grief after her son had been murdered when he was eleven years old. She conceded the period of her drug addiction and incarceration had some overlap with the first years of Child's life. However, Grandmother testified that she had consistently maintained sobriety for several years. Grandmother expressed grief at Child not knowing his half-siblings and wished to involve him in family events with Mother's other two children.

Two additional witnesses were called to testify by Grandmother, a friend and her former mother-in-law. Both witnesses agreed that Grandmother had turned her life around and continued to lead a productive life after she had achieved sobriety, despite her ongoing grief from her loss of two children.

Father testified concerning his own close relationship with Child. He described Child as a typical little boy in a close, loving relationship with all

members of his household. Nevertheless, Father acknowledged that Child had some behavioral and emotional problems that had manifested following his Mother's death for which he was undergoing long-term therapy. Father indicated his objection to Grandmother's request to visitation at the current time related primarily to his concern it would be detrimental to Child's emotional progress. Father testified that he understood stability and routine among the adults in his life to be a critical issue to Child's continuing to make progress. Father indicated that Child was thriving in his current home and doing well in school but was concerned about the effect that Grandmother would have on Child's emotional and mental well-being. He expressed concerns that Grandmother would not consistently demonstrate the degree of stability and routine sufficient to ensure that a relationship with her would not currently be detrimental to Child.

Regarding Mother's death, Father testified that Child had some awareness and understanding that she had passed away; however, he was otherwise unaware of any of the circumstances regarding her death. Father did not believe that Child was emotionally prepared to learn or process more details at the current time. He testified that he believed Grandmother would be incapable of appropriately restraining herself from speaking to Child about subject matter related to her grief from her daughter's passing. Father believed Grandmother would engage Child in discussions for which Child was not yet prepared.

Father testified that he and Mother had dated in high school; Child was born not long after Father was out of high school. He testified that his relationship with Grandmother, during the period that Mother was alive, had always been strained. He attributed this to his general misgivings concerning Grandmother's drug and criminal history and the nature of her prior relationship with Mother. He perceived Mother and Grandmother's relationship as contentious and volatile throughout the period he was able to observe it first-hand. Father testified to being aware that Grandmother had been convicted of charges that including trafficking in methamphetamine in 2014. He testified that initial charges in that case had included two counts of wanton endangerment, based upon the allegation that Grandmother's then-minor child, Mother, had been present in the home while Grandmother had trafficked narcotics.

Father testified that he did not intend to permanently shield Child from any knowledge of or contact with Grandmother or Mother's other children. He testified that, despite their prior strained relationship, he had initially allowed Grandmother to visit with Child, including at his own home, following Mother's death. However, he testified, that Grandmother's behavior during the scene she made after becoming upset about the separate birthday parties led him to believe she had placed more importance on her own feelings of offense than on Child's

well-being.  Father believed Grandmother remained too volatile for the emotional needs of Child, regardless of whether Grandmother had maintained sobriety.

Father disputed Grandmother's testimony that she had developed a strong relationship with Child; Father contended he never heard Child express wishes to visit with or even make reference to Grandmother.  He also disputed Grandmother's testimony that Child and Mother had resided with her for about a year, beginning when Child was approximately six months old.  He testified that, if this allegation were accurate, it would have been troubling to him because he was aware Grandmother had been criminally charged and incarcerated at a time that partially overlapped with the same period.  As to Mother's other children, Child's half-siblings, Father testified that Child did not know who they were.  He expressed misgivings over a text message Grandmother had sent about the half-siblings along with a photograph of them and a request that he show it to Child.  Father found the nature of the request inappropriate and stated it led him to believe that Grandmother would not exercise appropriate discretion regarding Child's emotional requirements.

Child's school counselor, Lamonica Brown, testified after Father.  She testified that Child was unable to discuss his Mother or her passing.  An occasion more than a year prior in which she had attempted to coax him to do so was not successful.  Brown concluded that a significant amount of emotional progress and

development would need to occur before Child would be prepared for any discussion of such emotional or sensitive topics. Brown indicated that Child appeared to be unaware of his half-siblings. She expressed an opinion that sudden introduction of Grandmother into Child's life could be detrimental to his clinical progress.

The family court issued an Order Denying Grandparent Visitation Rights ("the Order") on April 19, 2024. To Grandmother's credit, the family court found that Grandmother's current sobriety and her love for Child had been established by the evidence. Furthermore, the Order found that Grandmother had "spent considerable time with the child the first few years of his life, even while the [she] was fighting her own battles with addiction and incarceration."

However, the also Order found that Father was a fit parent, expressed that there were "no concerns about his ability to parent the child or make appropriate decisions on the child's behalf[,]" and that he was a "loving, doting father with a supportive family." The order further found, "The child is thriving in the care of the father and step-mother, with the exception of some behavioral and mental health struggles for which the father is actively seeking treatment."

The Order also noted Father's concern regarding introduction of the maternal Grandmother into Child's life and how that could affect Child's stability and progress. The Order placed much emphasis on the testimony of Child's

counselor and "deem[ed] her testimony credible as a disinterested third party with the minor child's best interest as a focus."  It found the counselor had expressed that Child was "clinically stable, however he is not ready to process trauma and grief and that they will need to continue developing the child's skills before he can process his mother's death."

Grandmother filed a Motion to Alter, Amend, or Vacate in the family court on April 28, 2024.  There, Grandmother alleged that "[a]s stated correctly by the Court, there is a rebuttable presumption that visitation with [Grandmother] is in the child's best interest due to the mother's passing.  [Grandmother] was able to prove all elements to establish the rebuttable presumption under KRS[1] 405.021(1)(c)."  The motion also stated that Child's therapist "did not specifically state a relationship with [Grandmother] would harm the child."

## ANALYSIS

As a preliminary matter, we must address Father's objection that Grandmother's brief fails to comply with the Kentucky Rules of Appellate Procedure ("RAP").  Father alleges the Appellant brief is in violation of several subsections of RAP 32.  Grandmother did not avail herself of the opportunity to file a Reply brief and leaves Father's allegations regarding her brief unanswered.

---

[1] Kentucky Revised Statutes.

The Appellant brief lacks any preservation statement and is in violation of RAP 32(A)(4). Additionally, Father points out that the Appellant brief makes a number of assertions about evidence presented to the family court for which there is no citation to the record. Father further alleges that no such supporting reference in the record can be located. In the Appellant brief, Grandmother made but a single citation to the certified record; near the opening of the Statement of the Case, there is a single citation to the location in the record of the Order under appeal. Such is hardly in keeping with the "ample references to the specific location in the record" that are required by RAP 32(A)(3) and RAP 32(A)(4).

Father alleges that multiple statements of fact Grandmother made in Appellant's brief without citation to the certified record are totally unsupported by the certified record itself. For example, Grandmother alleges on page 1 of the Appellant brief that she had "provided care and financial assistance for [Child]" during a period Child resided in her home, without any citation to the record. Father alleges that no supporting testimony or evidence whatsoever appears in the record, even during Grandmother's own testimony, to support the allegation she provided any financial assistance for Child. Grandmother proffered no response, despite the opportunity to do so by filing a Reply brief. Upon our review, we likewise failed to locate any instance of Grandmother alleging or providing

evidence to support this to the family court. Likewise, Father alleges that he could locate nowhere on the record that Grandmother made any statement to support the allegation in Appellant's brief that she had "assured the court that she would not discuss [Mother's] passing with [Child]." Upon our review, we do note that, in Grandmother's Motion to Alter, Amend, or Vacate, it is indicated that Grandmother was "agreeable to not speak with the child about his mother if that is [Father's] preference." Nevertheless, this was an unsworn statement in a post-hearing pleading, not evidence before the family court.

We agree that Grandmother's brief is in violation of the RAP. The sanctions available under the current Kentucky Rules of Appellate Procedure are as follows:

> [F]ailure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:
>
> > (1) A deficiency notice or order directing a party to take specific action,
> >
> > (2) A show cause order,
> >
> > (3) Striking of filings, briefs, record or portions thereof,
> >
> > (4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,
> >
> > (5) A dismissal of the appeal or denial of the motion for discretionary review, and

> (6) Such further remedies as are specified in any
> applicable rule.

RAP 10(B).

Where an appellant fails to comply with the appellate rules, we have generally described that, at our discretion, we may take any of the following approaches: "(1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions; or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to the appellant's statement of preservation of error." *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023) (citation omitted), *discretionary review denied* (Dec. 6, 2023).

The violations of the appellate rules in Grandmother's brief are significant. Such rules "do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination." *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977). Nonetheless, we are faced here with a certified record consisting of a single slim volume and video of a single hearing. Review of such a record is not particularly onerous.

We decline to strike Grandmother's brief, as Father requests. He requests, in the alternative, that we sanction Grandmother by limiting our review to "the issues raised in the brief for manifest injustice only[.]" *French v. French*, 581

-11-

S.W.3d 45, 49 (Ky. App. 2019) (quoting *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)).  Such a sanction would not be inappropriate here; we have issued the same for similar violations.  *See id.* at 47-49.  However, as this case involves the constitutional rights of biological parents, we will proceed with review and reluctantly decline to issue any sanction.  The consequences of this decision are not impactful to Father.  As set forth below, Grandmother's argument and proof falls well short of her burden for showing entitlement to relief for palpable error resulting in manifest justice or under otherwise applicable standards of review.

Furthermore, despite our declining to issue sanctions in the present matter, we caution counsel to, in the future, be mindful of the importance of compliance with all procedural rules and of the risks that are incurred by failing to do so.  Such risks for counsel are not confined to the imposition of sanctions by a court.  They also bear a direct relation to the efficacy of the case counsel builds.  "Adherence to" our appellate rules "reduces the likelihood that the advocates will rely on red herrings and straw-men arguments—typically unsuccessful strategies." *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010).

## STANDARD OF REVIEW

A family court has authority to grant a request for grandparent visitation over the objection of a fit parent as long as when doing so meets the requirements of *Walker v. Blair*, 382 S.W.3d 862 (Ky. 2012), in applying KRS

-12-

405.021(1)(a).  *Watkins v. Watkins*, 702 S.W.3d 449, 451 (Ky. App. 2024) (quoting *Pinto v. Robison*, 607 S.W.3d 669, 677 (Ky. 2020)) (internal quotation marks omitted).  We review the findings of fact made by a family court under the clearly erroneous standard and the record must reflect such findings were supported by substantial evidence.  CR[2] 52.01. Concurrently, we review the legal conclusions a family court has made under a *de novo* standard.  *Id.*

### Grandmother Was Not Entitled To A Rebuttable Presumption That Grandparent Visitation Was In Child's Best Interest.

Grandmother alleges that the family court erred in denying her request for grandparent visitation.  In support, she argues that there is a rebuttable presumption pursuant to KRS 405.021(1)(b) and (c), that visitation with her would be in Child's best interest since Mother (Grandmother's child) is deceased and Grandmother had a significant and viable pre-existing relationship with Child, as was recognized in the Order.  Furthermore, she argues, the Order nowhere concluded that visitation with her would, in fact, be harmful to Child.  The absence of such a finding renders the Order inadequate to overcome the statutory presumption in her favor, she alleges, and the family court committed reversible error by concluding otherwise in its analysis.  Appellant's brief, again, offered no explicit statement of preservation on this issue whatsoever.  However,

---

[2] Kentucky Rules of Civil Procedure.

-13-

Grandmother did present this very same argument to the family court in her Motion to Alter, Amend, or Vacate, as Father readily concedes in the Appellee brief.

Nonetheless, Father argues, any application of the provisions of KRS 405.021(1)(b) and (c), in the manner upon which Grandmother has presented her argument, was explicitly declared unconstitutional by the Kentucky Supreme Court in *Pinto*, 607 S.W.3d 669. We agree.

Grandmother makes specific citations to two cases in the Appellant brief, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); and *Walker*, 382 S.W.3d 862. Both are seminal and prominent to the issue at hand. However, as Father points out, Grandmother's statutory argument is in direct conflict with both cases.

In *Troxel*, the United States Supreme Court addressed the implications of state statutes that grant courts authority to order non-parental visitation with children over parental objections. 530 U.S. 57, 120 S. Ct. 2054. In *Walker*, the Supreme Court of Kentucky considered how to interpret KRS 405.021(1) consistently with *Troxel* and the constitutional principles laid out therein. 382 S.W.3d at 866.

At the time the opinion in *Walker* was rendered in 2012, KRS 405.021(1) was identical to what is now 405.021(1)(a). This subsection reads:

-14-

> The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by the termination of parental rights belonging to the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.

KRS 405.021(1)(a).

In 2018, more than five years after the opinion in *Walker* was rendered, KRS 405.021(1) was amended to include subsections (1)(b) and (c).

KRS 405.021(b) states:

> If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.

*Id*.

> KRS 405.021(c) states:
>
>> In order to prove a significant and viable relationship under paragraph (b) of this subsection, the grandparent shall prove by a preponderance of the evidence that:
>>
>> 1. The child resided with the grandparent for at least six (6) consecutive months with or without the current custodian present;

-15-

2. The grandparent was the caregiver of the child on a regular basis for at least six (6) consecutive months;

3. The grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months; or

4. There exist any other facts that establish that the loss of the relationship between the grandparent and the child is likely to harm the child.

*Id.*

Two years after these new subsections became law, our Supreme Court declared that, to the extent these subsections reversed the constitutional presumption in favor of a biological parent to a grandparent seeking visitation, they were unconstitutional. *Pinto*, 607 S.W.3d at 676.

The *Pinto* Court demonstrated the reasoning behind its ruling by reference to *Troxel* and *Walker*:

Turning now to KRS 405.021(1)(b), we see where the flipping of the presumption occurs. Paragraph (b) states as follows:

If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.

Under this, if a grandparent can prove the existence of a significant and viable relationship with the child merely

-16-

by a preponderance of the evidence as previously discussed, the grandparent is then entitled to a presumption in his or her favor. This portion of the statutory scheme again fails to accord the requisite "special weight" required by *Troxel* to the parent's determination regarding his or her child. It does not comply with the presumption in favor of the parent that this Court requires under *Walker*. Accordingly, it is violative of the United States Constitution's Due Process Clause on its face.

*Pinto*, 607 S.W.3d at 676.

Grandmother's argument, that the family court failed to ascribe adequate weight to the statutory presumption in her favor that she had established, rests upon a statutory interpretation that has been specifically held to be a constitutional violation. Accordingly, we certainly cannot conclude injustice occurred in the family court's denial of visitation.

**The Family Court Committed Nonreversible Error in the Order.**

While we note no error that was prejudicial to Grandmother in the Order, the family court did veer from the appropriate analysis as described in *Walker*. In the Order, the family court concluded at one point that: "[b]ecause of the mother's unfortunate death, the grandmother is entitled to a rebuttable presumption that visitation is in the child's best interest, per KRS 405.021(1)(b)." Thereafter, the Order concluded that:

[i]n considering the evidence submitted by the grandmother, upon whom the burden rests, this Court can find that the rebuttable presumption applies, as the

-17-

grandmother did have frequent or regular contact with the child for at least twelve (12) consecutive months. However, this Court finds that the rebuttable presumption has been overcome and that it is not in the best interest, at this time, to be reintroduced to his maternal grandmother.

This application of KRS 405.021(1)(b) and (c) was erroneous because it utilized the statutory presumption in the very manner deemed unconstitutional in *Pinto*: "such that visitation with the grandparent would be presumed to be in the best interest of the child, a presumption which the parent would then be required to rebut." 607 S.W.3d at 676.

Nevertheless, the Order does recognize elsewhere the "special weight" *Troxel* and *Walker* indicate must be afforded to the parent's determinations regarding the child. The Order early on recognized that "[t]he visitation rights of grandparents must yield to that of biological parents who have not been found to be unfit." It additionally referenced the maxim in *Walker*: "[t]he constitutional presumption that a fit parent acts in the child's best interest is the starting point for a trial court's analysis under KRS 405.021(1)." *Id.* (quoting *Walker*, 382 S.W.3d at 870-71).

Despite the erroneous application of an unconstitutional presumption, the Order found Father had rebutted this presumption by recognition of the primacy of his rights as natural parent. In its Order the family court concluded it:

> believe[d] that [Father], in collaboration with the child's long-term therapist is capable and willing to inform and

-18-

introduce the grandmother to the minor child when the child is appropriately prepared to do so. And, more importantly, he has a right to do so, which this Court must support.

Despite the offerings of grandmother, none of her evidence usurps the foregoing. The Court does not find that it is in the child's best interest for the grandmother to have visitation.

A grandparent seeking visitation must prove by *clear and convincing* evidence that he or she is entitled to visitation over the parent's objection. *Pinto*, 607 S.W.3d at 678 (emphasis added). Despite our Supreme Court declaring it unconstitutional in 2020, the legislature has made no modification to KRS 405.021(1)(c) as of the date of this Opinion. Nonetheless, we urge the family court to avoid any application of a preponderance of the evidence standard to analyze a grandparent's evidence in a visitation petition. Additionally, and despite the legislature's not having modified KRS 405.021(1)(b) as of this date, we urge the family court to not apply the rebuttable presumption stated therein against the objection of a fit parent in any future cases. Instead:

When ruling on a grandparent visitation petition under KRS 405.021(1), the trial court *must* presume that the parent is acting in the child's best interest. The grandparent petitioning for visitation may rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. And the trial court may consider several factors, which we have denominated the modified best interest standard, to determine whether visitation is clearly in the child's best interest.

*Walker*, 382 S.W.3d at 874-75 (emphasis added).

*Pinto* left "intact KRS 405.021(1)(a) and KRS 405.021(3) as potential avenues for a trial court to grant grandparent visitation so long as the trial court complies with *Walker* in applying those subsections of the statute." 607 S.W.3d at 677. The Order did not analyze Grandmother's petition pursuant to KRS 405.021(1)(a). However, Grandmother makes specific reference to only KRS 405.021(1)(b) and (c) in her argument and makes no specific citations to KRS 405.021(1)(a). Likewise, in her Motion to Alter, Amend, or Vacate, Grandmother made no reference to KRS 405.021(1)(a) nor did she request further findings from the family court regarding KRS 405.021(1)(a). Accordingly, we refrain from scrutiny as to whether the family court erred in this regard. *See Pinto*, 607 S.W.3d at 678 ("Further, [Grandparents] did not argue . . . that the trial court erred in failing to analyze their motion under paragraph (a). Therefore, with an eye towards finality and stability for the children and rest of the family, we will not address whether the trial court should have done so or remand for it to do so.").

While the Order explicitly analyzed Grandmother's Petition under the factors of KRS 405.021(1)(c), these do have some overlap with those in *Walker*. Moreover, the Order gives due consideration to the most relevant factor in the matter—the potential detriments and benefits to Child from granting visitation.

The Order's findings regarding grandmother's current sobriety and her love for Child were supported by substantial evidence and reflected matters appropriate for the family court's consideration. Nonetheless, the appropriate presumption for the family court to apply, the "special weight" that must be accorded to a fit parent's determination regarding his or her child, sets a high burden for a grandparent to meet. *Pinto*, 607 S.W.3d at 675.

> [T]he grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation.

*Walker*, 382 S.W.3d. at 871.

Although the family court erred by applying the statutory subsections deemed to be unconstitutional, the error was harmless because the court reached the correct result and its judgment was not inconsistent with substantial justice. *See* CR 61.01.

## CONCLUSION

Nowhere above do we mean to imply that Appellant is not a loving grandmother or that she has not demonstrated an admirable achievement in her sobriety. However, these factors alone are not sufficient grounds for a court to determine that a grandparent has overcome the appropriate constitutional

presumption—that a fit parent make decisions in children's best interests.  We affirm the McCracken Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Heather L. Jones
Paducah, Kentucky

BRIEF FOR APPELLEE:

Brad Miller
Paducah, Kentucky